# Severance Agreement Between a Prospective Federal Appointee and His Law Firm

Severance arrangements between a prospective appointee to federal office and his law firm do not result in an unlawful supplementation of his federal salary in violation of 18 U.S.C. § 209, notwithstanding the fact that they deviate in certain respects from the terms of the law firm's partnership agreement.

May 7, 1980

## MEMORANDUM OPINION FOR
## THE DEPUTY COUNSEL TO THE PRESIDENT

This is in response to your request of our review of the withdrawal agreement entered into by Mr. A, a nominee to federal office, and the law firm of which he is a partner, Firm X. More particularly, you ask whether the agreement is consistent with the federal conflict of interest laws, including 18 U.S.C. § 209. That statute in general prevents an officer or employee of the Executive Branch from receiving, or anyone from paying him, any salary or supplementation of salary for his services to the government.

Article VIII of the Firm X partnership agreement, provides for retirement, with a cash benefit payable in 60 monthly installments, for a partner who leaves the firm under certain conditions. Mr. A is eligible for retirement, which under the agreement would terminate his interest in the partnership. A technique for less than complete severance from the firm is provided by Article XIII-2 of the agreement. It authorizes a temporary withdrawal of a partner for a period of no longer than 15 months, subject to such terms and conditions as a majority of the other partners may specify. A temporary withdrawal does not terminate a partner's interest and he remains a member of the firm. You will recall that Mr. A informed us at our meeting with him that his firm was agreeable to his choice of departure under either Article VIII or Article XIII-2 and would approve the same financial arrangements under either option. Mr. A chose retirement under Article VIII and the withdrawal agreement was drawn accordingly.

The withdrawal agreement will come into force on the day of Mr. A's confirmation by the Senate. It provides for variations from the Firm X partnership agreement in connection with his capital account and the payment of his retirement benefits. Under Article VIII-3(a) and

VII–2(a) and (d) of the latter document, the capital account would be paid within 90 days after separation and the monthly retirement payments would commence at the end of the month following his retirement. However, the withdrawal agreement provides for the firm to defer liquidation of the capital account until Mr. A requests it and to defer initiation of the retirement installments for 24 months after his separation from Firm X, unless he is readmitted to membership before then or if the 24-month period is extended by mutual consent.

It is appropriate to consider first the element of intent on the part of Firm X and Mr. A. If the firm and he went beyond the provisions of Articles VIII and VII–2(a) and (d) with a view to providing something of value to him as a supplement to his federal salary, then § 209(a) would be a bar to his filling that office and our discussion would end at this point. However, there is nothing in the circumstances here to suggest that the firm was motivated by anything but a desire to accommodate Mr. A in recognition of his years of membership in it, or that he had in mind obtaining from the firm a subsidy of his employment by the government. We have no difficulty in ruling out both possibilities. *See* 41 Op. Att'y Gen. 217, 221 (1955).

Remaining for consideration in relation to § 209(a) is the question whether the withdrawal agreement is *per se* inconsistent with Mr. A's taking and remaining in office. Had that agreement followed the terms of the partnership compact, there would be no doubt that any benefits that might flow from it to Mr. A would fall within the exemption from § 209(a) granted by § 209(b) with respect to a "bona fide . . . retirement . . . plan maintained by a former employer." However, the described variations raise the question whether the withdrawal agreement itself bestows on Mr. A a form of "contribution to or supplementation of salary, as compensation for his services as an officer" of the federal government that is not waived by § 209(b).

The deferral of the payout of Mr. A's capital account will provide no significant financial benefit to him that we are aware of. On the other hand, he has stated that he requested the temporary deferment of the retirement payments in order to reduce the amount of income tax liability they would otherwise generate. This Office has generally viewed severance arrangements that minimize a recipient's tax liability as not cutting across the prohibition of § 209(a). Nevertheless, for the reasons set forth below, we do not find it necessary to pass on the agreed variations from Firm X's retirement program in that context.

It appears that if Mr. A and his firm had determined that he should undertake his projected government service while remaining a member of the firm under Article XIII–2 of its governing instrument, in addition to forgoing his share of profits during his absence, he would not receive the return of his capital or any retirement payments. Thus, he would be in the same position as the withdrawal agreement calls for but

would have avoided the question under consideration here. As a practical matter, however, temporary withdrawal under Article XIII-2 was and is not open to him as a means of avoiding the possible impact of § 209(a). That is so because, as you informed him at our meeting, White House policy prevents a partner of a law firm from serving the government under a presidential appointment to a full-time post unless he withdraws from the firm. That condition would not be met by the mere temporary suspension of Mr. A under Article XIII-2.

It would be anomalous to conclude on the one hand that § 209(a) stands in the way of the financial arrangement worked out between Mr. A and his firm because it deviates to some extent from certain provisions of the partnership agreement, and to conclude on the other hand that the same financial arrangement under other provisions of the partnership agreement would comport with § 209(a). Because the White House policy that has intervened to prevent resort to the latter provisions is not based on any prohibition of § 209(a), we do not believe that any purpose of the statute would be furthered by reading it to require this formalistic stalemate and the consequent loss of Mr. A's services to the government. In short, we are of the opinion that implementation of the executed withdrawal agreement, just like implementation of a similar agreement drawn under Article XIII-2, would not contravene § 209(a).

The withdrawal agreement need not be examined in the light of any of § 209's companion conflict of interest statutes except 18 U.S.C. § 208, which prohibits a federal employee from participating in a matter for the government in which, to his knowledge, "he, his . . . partner . . . or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest. . . ." The term "financial interest" does not extend to the creditor's claim against his firm that Mr. A will have when the withdrawal agreement comes into force. Nevertheless, in order to avoid adverse appearances, Mr. A should recuse himself from any matter which may come before him as an official of the government in which Firm X appears as counsel or otherwise has a financial interest.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
